IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| GLORIA WILLIAMS and JUAN MONTALVO, individually and on behalf of all other persons similarly situated,<br><br>       *Plaintiffs*,<br><br>VS.<br><br>FORTUNEBUILDERS, INC.,<br><br>       *Defendant* | CIVIL ACTION NO.<br><br>3:18-cv-1494 |

## PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

GLORIA WILLIAMS AND JUAN MONTALVO ("Plaintiffs"), individually and on behalf of all other persons similarly situated, bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant FORTUNEBUILDERS, INC. ("Defendant") to stop Defendant's practice of making unsolicited telemarketing calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiffs, for their Complaint, alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorney.

### INTRODUCTION

1.     Defendant FortuneBuilders, Inc. is a real estate investing Education Company. In an effort to solicit potential customers, FortuneBuilders, Inc. recruited, or employed call centers, to place telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant and or its agents purchase phone number databases of consumers' contact information

and create electronic databases from which Defendant or its agents makes automated calls.

2.      Defendant conducted wide scale telemarketing campaigns and repeatedly made unsolicited calls to consumers' telephones—whose numbers appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.      The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seek an injunction requiring Defendant's to cease all unsolicited telephone calling activities to consumers registered on the National Do Not Call Registry and an award of statutory damages to the members of the Class under the TCPA up to $500.00 per violation, together with court costs, reasonable attorneys' fees, and up to three times actual monetary loss damages (for knowing and/or willful violations).

4.      By making the telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as the monies paid to their carriers for the receipt of such telephone calls.

5.      Plaintiffs bring this class action against Defendant to secure redress because Defendant willfully violated the TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), 47 U.S.C § 227, *et seq.* by causing unsolicited calls to be made to Plaintiffs and other class members' telephones through the use of an auto-dialer and/or artificial or pre-recorded voice message.

## PARTIES

6.      Plaintiff GLORIA WILLIAMS is a natural person and citizen of Lancaster, TX.

7.       Plaintiff JUAN MONTALVO is a natural person and citizen of East Haven, CT.

8.       Defendant FORTUNEBUILDERS, INC. is a corporation organized under the laws of the State of Connecticut. Defendant maintains its principal place of business in San Diego, CA. Defendant may be served with process by serving its registered agent, Paul Esajian, at 3033 Bunker Hill St., San Diego, CA 92109.

9.       Plaintiffs do not yet know the identity of Defendant's employees/agents that had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. They will be named, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001) ("*American Blastfax*"); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011) ("*Universal Elections*"); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011) ("*Versteeg*"). Upon learning of the identities of said individuals, Plaintiffs will move to amend to name the individuals as defendant.

10.      Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act

or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12.    The Court has personal jurisdiction over Defendant because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

14.    Defendant is subject to specific personal jurisdiction in this District because they have continuous and systematic contacts with this District through their telemarketing efforts that target this District, and the exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

## LEGAL BASIS FOR THE CLAIMS

15.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

16.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems,

artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems— principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

17.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminate this established business relationship exemption.  Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

18.     As of October 16, 2013, unless the recipient has given <u>prior express written consent</u>,[1] the TCPA and Federal Communications Commission (FCC) rules under the TCPA generally:

- Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Requires solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibits solicitations to residences that use an artificial voice or a recording.

- Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

- Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

- Prohibits autodialed calls that engage two or more lines of a multi-line business.

- Prohibits unsolicited advertising faxes.

- Prohibits certain calls to members of the Do-Not-Call Registry

19.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

20.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.  Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

21.     There are just a handful of elements need to be proven for violations of the Do Not Call provision of the TCPA.

**A.      DO NOT CALL VIOLATIONS OF THE TCPA**

22.     <u>More Than One Call within Any 12 Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

23. <u>Calls to Residential Lines on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

24. <u>Or, Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

25. <u>The Affirmative Defense of Prior Express Consent</u>. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("*Satterfield*")). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." See *Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a

TCPA plaintiffs' prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

## COMMON FACTUAL ALLEGATIONS

26.     Defendant FortuneBuilders, Inc. is a real estate investing Education Company. During or before May 2015, in an effort to solicit potential and former customers, FortuneBuilders, Inc. recruited, or employed call centers, to place telephone calls, *en masse*, to consumers across the country. On information and belief, Defendant and or their agents purchase "leads" containing consumers' contact information and create electronic databases from which Defendant makes automated calls.

27.     In Defendant's overzealous attempt to market its services, they placed phone calls to consumers who never provided consent to call, and to consumers having no relationship with Defendant. Worse yet, Defendant placed repeated and unwanted calls to consumers whose phone numbers are listed on the National Do Not Call Registry. Consumers place their phone numbers on the Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls like those alleged here.

28.     Defendant knowingly made these telemarketing calls without the prior express written consent of the call recipients, and knowingly continue to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF WILLIAMS

29.     On or about October 23, 2012 Plaintiff Williams registered her cellular phone number with the area code (972) and ending in 6580 with the National Do Not Call Registry.

30.     Plaintiff Williams is the regular carrier and exclusive user of the telephone assigned the number ending in 6580.  The number is assigned to a cellular telephone service for which Plaintiff Williams is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

31.     In the late May of 2015, Plaintiff Williams began receiving calls on her cellular telephone from the number (858) 200-7327, claiming to be Defendant FortuneBuilders, Inc.

32.     Plaintiff Williams never had a business relationship with Defendant.

33.     Plaintiff Williams never provided Defendant with prior consent to contact her on her phone via a text message or telephone call.

34.     Nonetheless, Defendant called Plaintiff Williams dozens of times on her phone during a twelve-month period, often two to three times daily.

35.     Plaintiff Williams specifically and bluntly told Defendant, "Can you stop calling me?" Yet, the calls continued.

36.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

37.     Defendant's unsolicited telemarketing calls caused Plaintiff Williams extreme aggravation and occupied her telephone line.

38.     Plaintiff Williams has reason to believe Defendant called thousands of telephone customers listed on the Do Not Call Registry to market their products and services.

39.     Plaintiff's overriding interest is ensuring Defendant cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

40.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, bring suit under the TCPA, 47

U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to individuals whose numbers are registered on the Do Not Call Registry.

41.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class numbers, together with costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO JUAN MONTALVO

42.     On or about February 20, 2012 Plaintiff Montalvo registered his cellular phone number with the area code (860) and ending in 1577 with the National Do Not Call Registry.

43.     Plaintiff Montalvo is the regular carrier and exclusive user of the telephone assigned the number ending in 1577.  The number is assigned to a cellular telephone service for which Plaintiff Montalvo is charged for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

44.     In the late spring of 2015, Plaintiff Montalvo began receiving calls on his cellular telephone from the number (858) 703-4777, claiming to be Defendant FortuneBuilders, Inc.

45.     Plaintiff Montalvo never had a business relationship with Defendant.

46.     Plaintiff Montalvo never provided Defendant with prior consent to contact him on his phone via a text message or telephone call.

47.     Nonetheless, Defendant called Plaintiff Montalvo dozens of times on his phone during a twelve-month period, often two to three times daily.

48.     Plaintiff Montalvo specifically and bluntly told Defendant, "I'm not interested, please take me off your list." Yet, the calls continued.

49.     Moreover, Plaintiff Montalvo utilized the pre-recorded message opt out feature from Defendant's calls; however, the calls continued.

50.     Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

51.     Defendant's unsolicited telemarketing calls caused Plaintiff Montalvo extreme aggravation and occupied his telephone line.

52.     Plaintiff Montalvo has reason to believe Defendant called thousands of telephone customers listed on the Do Not Call Registry to market their products and services.

53.     Plaintiff's overriding interest is ensuring Defendant cease all illegal telemarketing practices and compensates all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

54.     In order to redress injuries caused by Defendant's violations of the TCPA, Plaintiff, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited calls voice and text to individuals whose numbers are registered on the Do Not Call Registry.

55.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendant to cease all illegal telemarketing and spam activities and an award of statutory damages to the class numbers, together with costs and reasonable attorneys' fees.

## STANDING

56.     Plaintiffs have standing to bring this suit on behalf of themselves and the members of the class under Article III of the United States Constitution because Plaintiffs' claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## A.     INJURY IN FACT

57.     Plaintiffs have standing to bring this suit on behalf of themselves and the members of the class under Article III of the United States Constitution because Plaintiffs' claims state: (a) a valid injury in fact; (b) an injury which is traceable to the conduct of Defendant; and (c) is likely to be redressed by a favorable judicial decision. *See Spokeo v. Robins*, 578 U.S. __ (2016) at 6; *Robins v. Spokeo,* 867 F.3d 1108 (9th Cir. 2017) (cert denied. 2018 WL 491554, U.S., Jan. 22 2018); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); and *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).

58.     Plaintiffs' injuries must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution. *(Id.)*

59.     For an injury to be concrete it must be a de facto injury, meaning it actually exists. In the present case, Plaintiffs took the affirmative step of enrolling themselves on the National Do-Not-Call Registry for the purpose of preventing marketing calls to their telephones. Such telemarketing calls are a nuisance, an invasion of privacy, and an expense to Plaintiffs. *See Soppet v. enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012). All three of these injuries are present in this case. (See also *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016).)

60.     Furthermore, the Third Circuit recently stated, Congress found that "[u]nsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients," *Van Patten*, 847 F.3d at 1043, and sought to protect the same interests implicated in the traditional common law cause of action. Put differently, Congress was not inventing a new theory of injury when it enacted the TCPA. Rather, it elevated a harm that, while "previously inadequate in law," was of the same character of previously existing "legally cognizable injuries." *Spokeo*, 136 S.Ct. at 1549. *Spokeo* addressed, and approved, such a choice by Congress. *Susinno v. Work Out World Inc.,* No. 16-3277, 2017 WL 2925432, at *4 (3d Cir.

July 10, 2017).

61.     For an injury to be particularized means that the injury must affect the plaintiffs in a personal and individual way. *See Spokeo* at 7.  Furthermore, Plaintiffs are the persons who pays for the phone, and are the regular carrier and user of the phone.  All of these injuries are particular to Plaintiffs.

**B.      TRACEABLE TO THE CONDUCT OF EACH SEPARATE DEFENDANT**

62.     Plaintiffs must allege at the pleading stage of the case facts to show that their injury is traceable to the conduct of Defendant. In this case, Plaintiffs satisfy this requirement by alleging that Defendant, and/or agents of Defendant on behalf of Defendant, placed illegal calls to Plaintiffs' phone.

63.     In the instant case, Defendant placed calls to Plaintiffs' wireless/cellular phone on multiple occasions.

**C.      INJURY LIKELY TO BE REDRESSED BY A FAVORABLE JUDICIAL OPINION**

64.     The third prong to establish standing at the pleadings phase requires Plaintiffs to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.  In the present case, Plaintiffs' Prayers for Relief include a request for damages for each call made by Defendant, as authorized by statute in 47 U.S.C. § 227. The statutory damages were set by Congress and specifically redress the financial damages suffered by Plaintiffs and the members of the putative class.  Furthermore, Plaintiffs' Prayers for Relief request injunctive relief to restrain Defendant from the alleged abusive practices in the future. The award of monetary damages and the order for injunctive relief redress the injuries of the past, and prevent further injury in the future.

65.     Because all standing requirements of Article III of the U.S. Constitution have been

met, as laid out in *Spokeo, Inc. v. Robins,* 578 U.S. ___ (2016) and in the context of a TCPA claim, as explained by the Ninth Circuit in *Chen v. Allstate Inc. Co.*, 819 F.3d 1136 (9th Cir. 2016), Plaintiff has standing to sue Defendant on the stated claims.

## CLASS ACTION ALLEGATIONS

**A.    CLASS ALLEGATIONS**

66.    Plaintiffs brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of himself and the following class defined as follows (the "Class"):

> **"DNC[2] Class":** All individuals in the United States who: (1) received more than one telephone call made by or on behalf of Defendant within a 12-month period; and, (2) to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

67.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiffs' counsel and Defendant's counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released; and (7) individuals for whom Defendant have record of consent to place telemarketing calls.

68.    This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

---

[2] "DNC" referenced herein refers to the National Do Not Call Registry, established pursuant to 47 U.S.C. 227(c) and the regulations promulgated by the Federal Communications Commission ("FCC").

69.     Plaintiffs reserve the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

70.     Plaintiffs and members of the Class were harmed by Defendant's acts in at least the following ways: Defendant, either directly or through agents, illegally contacted Plaintiffs and the Class members *via* their telephones, after Plaintiffs and the Class members took the affirmative step of registering their numbers on the DNC, and/or contacted Plaintiffs and members of the Class using a pre-recorded voice for telemarketing purposes without first obtaining prior consent.

**B.     NUMEROSITY**

71.     The exact size of the Class is unknown and not available to Plaintiffs at this time, but it is clear individual joinder is impracticable.

72.     On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be easily identified through Defendant's records.

**C.     COMMONALITY AND PREDOMINANCE**

73.     There are many questions of law and fact common to the claims of Plaintiffs and the Class, and those questions predominate over any questions that may affect individual members of the Class.

74.     Common questions for the Class include, but are not necessarily limited to the following:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls to consumers who did not previously provide Defendant and/or their agents with prior express written consent to receive such phone calls after October 16, 2013;

(c)     Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call

Registry;

(d)     Whether members of the Class are entitled to up to three times actual monetary loss based on the willfulness of Defendant's conduct;

(e)     Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

**D.     TYPICALITY**

75.     Plaintiffs' claims are typical of the claims of the other members of the Class.

76.     Plaintiffs and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Class.

**E.     ADEQUATE REPRESENTATION**

77.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

78.     Plaintiffs have no interest antagonistic to those of the Class, and Defendant have no defenses unique to Plaintiffs.

**F.     POLICIES GENERALLY APPLICABLE TO THE CLASS**

79.     This class action is appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

80.     Defendant's practices challenged herein apply to and affect the Class' members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

**G.     SUPERIORITY**

81.     This case is also appropriate for class certification because class proceedings are

superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

86. 82. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

83. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct.

84. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

85. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered, and uniformity of decisions ensured.

## FIRST CAUSE OF ACTION
### VIOLATION OF TCPA, 47 U.S.C. § 227
### ("DNC Claim" On behalf of Plaintiff and the DNC Class)

86. Plaintiffs re-allege and incorporates by reference each preceding paragraph as though set forth at length herein.

87. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

88.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. § 64.1200(c).

89.     47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

90.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiffs and the DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

91.     Defendant made more than one unsolicited telephone call to Plaintiffs and members of the Class within a 12-month period without their prior express consent to place such calls.

Plaintiffs and members of the DNC Class never provided any form of consent to receive telephone calls from Defendant do not have a record of consent to place telemarketing calls to them.

92.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the DNC Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

93.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the DNC Class members received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the DNC Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

94.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), increase the amount of the award three times the amount of statutory damages recoverable by the members of the Class.

## ATTORNEY'S FEES

95.     Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

96.     Plaintiffs are entitled to recover reasonable attorney fees under Rule 23 of the Federal Rules of Civil Procedure, and requests the attorneys' fees be awarded.

## JURY DEMAND

97.     Plaintiffs, individually and on behalf of the Class, demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

(a)     An order certifying the DNC Class as defined above, appointing Plaintiffs as the representative of the Class, and appointing his counsel, Hughes Ellzey, LLP as lead Class Counsel;

(b)     An award of actual and statutory damages for each and every negligent violation to each member of the Class pursuant to 47 U.S.C. § 227(b)(3)(B);

(c)     An award of actual and statutory damages for each and every knowing and/or willful violation to each member of the Class pursuant to 47 U.S.C § 227(b)(3)(B);

(d)     An injunction requiring Defendant and Defendant's agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class, pursuant to 47 U.S.C. § 227(b)(3)(A);

(e)     Pre-judgment and post-judgment interest on monetary relief;

(f)     An award of reasonable attorneys' fees and court costs; and

(g)     All other and further relief as the Court deems necessary, just, and proper.

Dated:  August 28, 2018

Respectfully submitted,

**HUGHES ELLZEY, LLP**

_____/s/ Jarrett Ellzey_____
W. Craft Hughes
Texas State Bar No. 24046123
craft@hughesellzey.com
Jarrett L. Ellzey
Texas State Bar No. 24040864
jarrett@hughesellzey.com
HUGHES ELLZEY, LLP
Galleria Tower I
2700 Post Oak Boulevard, Suite 1120
Houston, TX 77056
Tel: (713) 554-2377
Fax: (888) 995-3335

_Counsel for Plaintiffs and the Putative Class_